**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SIMONE MIELNICKI,

    Plaintiff - Appellant,

v.

WAL-MART STORES, INC.,

    Defendant - Appellee.

No. 17-1396
(D.C. No. 1:16-CV-01484-PAB-NYM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

Simone Mielnicki sued her former employer, Wal-Mart Stores, Inc. (Walmart),

under the Americans with Disabilities Act (ADA) and the Colorado

Anti-Discrimination Act for discrimination on the basis of disability and under the

Colorado Wage Claim Act for unpaid compensation. She appeals the district court's

grant of summary judgment in favor of Walmart on her ADA claim. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

The relevant facts are undisputed. Ms. Mielnicki is in her sixties but, due to a developmental disability, has the mental capacity of a thirteen-year-old. Though she lives independently, she cannot drive a car, and family members must assist her with tasks such as shopping for food and paying bills. For about fourteen years, she was employed by Walmart, first as a shopping-cart attendant, then as a maintenance associate. When she accepted the latter position, she signed a job description indicating that she both did and did not "have the ability to perform the essential functions of this position either with or without a reasonable accommodation." Aplt. App., Vol. 1 at 33. Her job duties included providing assistance in various areas of the store by moving items to the front of shelves, sweeping and mopping, maintaining the spill stations, and serving on the safety committee. She had an excellent attendance record, and her written evaluations were generally positive.

The job description stated that cleaning the restrooms was an essential function of the maintenance associate position. For years, the two other maintenance associates did this job, but Ms. Mielnicki did not. After one of the other maintenance associates left, however, a store manager directed Ms. Mielnicki to clean the men's restroom. She refused, stating that she was afraid a man would come in and attack her. Later, she submitted an accommodation medical questionnaire from her doctor stating that she "socially cannot handle certain situations such as being in [the] men's bathroom" and that she should not be exposed to cleaning products due to her eczema. *Id.* at 52. The doctor made the following accommodation recommendation:

"Patient has demonstrated a 14 year history at Walmart working as a special needs employee in various positions that have not been a problem in the past. Returning to one of those positions would be ideal." *Id.* Walmart placed Ms. Mielnicki on personal leave, pending job reassignment if a suitable position were to become available. She soon obtained other employment with another employer, and Walmart formally terminated her.

Ms. Mielnicki then filed this lawsuit. Walmart moved for summary judgment, arguing that cleaning the restrooms was an essential function of her job that she could not perform with or without any reasonable accommodation. The district court granted the motion, agreeing that cleaning the restrooms was an essential function of being a maintenance associate and stating that Ms. Mielnicki "offers no legal or factual authority for finding that she was in a special position and was merely called a maintenance associate for record-keeping purposes." *Id.*, Vol. 2 at 372 (internal quotation marks omitted).

Ms. Mielnicki argues the district court erred by determining that she was a maintenance associate and that cleaning the restrooms was an essential function of her job.

## II. Analysis

We review de novo the district court's grant of summary judgment, applying the same standard as the district court. *Duvall v. Ga.-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1259 (10th Cir. 2010). We must affirm if the evidence, viewed in the

light most favorable to Ms. Mielnicki, reveals no genuine dispute as to any material fact and that Walmart is entitled to judgment as a matter of law. *See id.*

To state a prima facie case on her ADA claim, Ms. Mielnicki must show that (1) she was disabled, (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job, and (3) she was fired because of her disability. *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015). If one of these elements is not shown, the others do not need to be addressed. *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261-62 (10th Cir. 2009). This case hinges on the second element. "We weigh heavily the employer's judgment regarding whether a job function is essential." *Id.* at 1262. "Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *Id.* (internal quotation mark omitted).

Ms. Mielnicki concedes that cleaning the restrooms is an essential function of being a maintenance associate and that she could not perform it, with or without any reasonable accommodation. But she argues that the district court erred by determining that she was in fact a maintenance associate. She contends that she was a maintenance associate in name only and that her actual job was something different because for years she performed various tasks as a Walmart employee that did not include cleaning the restrooms. However, "[w]e are reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122

4

(10th Cir. 2004). That Walmart did not direct her to clean the restrooms for several years does not mean it was not an essential function of her job. The requirement is clearly job-related, and the evidence shows that it was uniformly enforced with respect to the other maintenance associates. When one of those associates left, Ms. Mielnicki was asked to perform that function out of business necessity.

The essential-function inquiry depends on "whether a job function was essential at the time it was *imposed*." *Hennagir*, 587 F.3d at 1262 (emphasis added). "A particular job duty may be essential because the reason the position exists is to perform that function, or because of the limited number of employees available among whom the performance of that job function can be distributed." *Hawkins*, 778 F.3d at 884 (citation and internal quotation marks omitted). Ms. Mielnicki cites no authority for the proposition that a job function is not essential if an employer for an extended period excuses an employee from performing it. To the contrary, we have held that an employer may require an employee to be able to perform functions that she might rarely, or even never, need to perform. *See Hennagir*, 587 F.3d at 1263-64 (listing job functions that might be needed only infrequently but could be deemed essential nonetheless).

Ms. Mielnicki also argues that Walmart must have intended to hire her for a position that did not require the ability to perform all the essential functions of a maintenance associate because the job description she signed is equivocal—she simultaneously certified that she did and did not have the ability to perform the essential functions of the job. But this ambiguity does not mean that Walmart

created a special position for her, as she contends. Rather, Walmart excused her from performing an essential function of the position even though it was not required to do so. An employer that goes beyond what is required under the ADA to permit an employee to perform only some of the essential functions of the position is not then estopped from insisting that the employee perform all of the essential functions of her job. "[W]e will not obligate an employer to create a position out of wholecloth to accommodate the individual in question." *Hawkins*, 778 F.3d at 884. Nor is Ms. Mielnicki's 2007 evaluation, on which her position is listed as "salesfloor," Aplt. App., Vol. 2 at 331, sufficient to raise a genuine issue of material fact about what her job was. Walmart produced evidence that no such position existed, and every subsequent evaluation in the record indicated that Ms. Mielnicki held a "maintenance" position, *id.* at 332-44.

Ms. Mielnicki's contention that Walmart had experienced no hardship in not requiring her to clean the restrooms also misses the mark. First, it ignores the changed circumstances that arose when one of the other maintenance associates left. In addition, it conflicts with the principle that "[a]n employer is not required to reallocate essential functions" to accommodate a disabled employee. *Duvall*, 607 F.3d at 1262 (ellipsis and internal quotation marks omitted). Further, "[t]he ADA does not limit an employer's ability to establish or change the content, nature, or functions of a job." *Hennagir*, 587 F.3d at 1262 (internal quotation marks omitted). Ms. Mielnicki has failed to raise a genuine issue of material fact

6

concerning whether she could perform the essential functions of her job as a maintenance associate.

## III.  Conclusion

Because Ms. Mielnicki failed to establish a prima facie case of discrimination on the basis of disability, the district court properly entered judgment in favor of Walmart.

Entered for the Court

Mary Beck Briscoe
Circuit Judge